**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

INTERNATIONAL BUSINESS MACHINES CORPORATION,

                *Plaintiff*,

       v.

PATAMA CHANTARUCK,

                *Defendant*.

**COMPLAINT**

Case No. 23-cv-1191

---

Plaintiff International Business Machines Corporation ("IBM" or "Plaintiff"), by and through its attorneys Davis+Gilbert LLP, for its Complaint against Patama Chantaruck ("Chantaruck" or "Defendant"), states as follows:

**A. The Parties**

1. IBM is a corporation duly organized under the laws of the State of New York with its principal place of business in Armonk, New York, within Westchester County.

2. Defendant is an individual domiciled at 99/99 Perfect Masterpiece (RAMA 9-KrungthepKreetha) Krungthep Kreetha Road, Khlong Song Ton Nun, Lat Krabang, Bangkok, Thailand 10520.

**B. Background Facts**

3. Beginning on October 1, 2018, Defendant became employed by IBM's Thai subsidiary, IBM Thailand Company Limited ("IBM Thailand"), as Country General Manager of Thailand and Vice President of Indo China Expansion.

4. In this role, Defendant was the highest-ranking IBM executive in Thailand, and had

only a few peers of similar ranking in the Asia-Pacific region.

5. In connection with Defendant's employment with IBM Thailand, Defendant came into possession of IBM's confidential information, intellectual property, and trade secrets ("IBM's Confidential Information").

6. Shortly after commencing employment with IBM Thailand, Defendant entered into IBM's Long-Term Performance Plan (the "Plan"), whereby Defendant was entitled to, and ultimately did, receive equity awards from IBM in exchange for further agreements to, in relevant part, safeguard IBM's Confidential Information and not engage in certain proscribed competitive conduct within specific time periods.

7. During all relevant times herein, Defendant was a participant in the Plan, through which she received equity awards (the "Awards").

8. The Plan provides that IBM is entitled to cancel and rescind the Awards if Defendant engages in "Detrimental Activity" as defined in the Plan, including by accepting employment with competitors within restricted time periods (the "Rescission Periods").

9. Defendant voluntarily resigned from IBM Thailand effective February 28, 2022.

10. Effective April 11, 2022, just over one month after her date of separation from IBM Thailand and within the Rescission Periods, Defendant willfully became employed with Accenture Co. Ltd. ("Accenture Thailand") – which, upon information and belief, is a subsidiary of Accenture plc ("Accenture") through which Accenture competes with IBM and IBM Thailand – in a role that is highly similar to Defendant's prior role with IBM Thailand.

11. By accepting her position with Accenture Thailand during a restricted time period, Defendant violated her obligations to IBM under the Plan.

12. IBM thereafter notified Defendant that it was canceling and rescinding the

monetary benefits she received in exchange for executing the Plan, Equity Award Agreements (the "EAAs"), and the respective Terms and Conditions of each Equity Award Offering (the "Equity Award Terms and Conditions").

13. IBM demanded repayment by a date certain.

14. Defendant has, without justification, refused and failed to repay the Awards, totaling $470,220.96.

15. Defendant has expressly stated her intent to continue refusing to repay the Awards to IBM.

16. Because Defendant has refused to make such repayment, Defendant is in breach of the Plan and is liable to IBM for the damages caused by such breach.

17. IBM brings this action for monies due and owing to IBM by Defendant pursuant to the terms of the Plan.

C. **Jurisdiction and Venue**

18. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and there is complete diversity of citizenship between the parties.

19. This Court has personal jurisdiction over Defendant because she entered into incentive compensation agreements with IBM, a New York corporation, headquartered in New York. This case arises from those agreements. Moreover, the parties have contractually submitted to the jurisdiction of this Court by the terms of the Plan and the respective Equity Award Terms and Conditions.

20. Venue properly lies in this Court pursuant to 28 U.S.C. § 1391 because IBM's headquarters and principal place of business are situated within this judicial district, and a

substantial part of the events giving rise to the claims occurred in this judicial district.

21. Venue also properly lies in this Court pursuant to the parties' agreement contained in the Plan and Equity Award Terms and Conditions.

**D. The Plan**

22. As stated therein, the Plan "is designed to attract, motivate and retain selected employees of […] the Company. These objectives are accomplished by making long-term incentive and other awards under the Plan, thereby providing Participants with a proprietary interest in the growth and performance of the Company." The Plan defines "Company" as "IBM and its affiliates and subsidiaries including subsidiaries of subsidiaries and partnerships and other business ventures in which IBM has an equity interest."

23. Section 13(a) of the Plan provides, in pertinent part (emphases added):

Unless the Award Agreement specifies otherwise, the **Committee may cancel, rescind, suspend, withhold or otherwise limit or restrict any unexpired, unpaid, or deferred Awards at any time** if the Participant is not in compliance with all applicable provisions of the Award Agreement and the Plan, **or if the Participant engages in any 'Detrimental Activity.'** For purposes of this Section 13, 'Detrimental Activity' shall include: (i) **the rendering of services for any organization or engaging directly or indirectly in any business which is or becomes competitive with the Company**, or which organization or business, or the rendering of services to such organization or business, is or becomes prejudicial to or in conflict with the interests of the Company; [….] or (viii) any other conduct or act determined to be injurious, detrimental or prejudicial to an interest of the Company.

24. Section 13(b) of the Plan provides, in pertinent part (emphasis added):

Upon exercise, payment or delivery pursuant to an Award, the Participant shall certify in a manner acceptable to the Company that she or she is in compliance with the terms and conditions of the Plan. **In the event a Participant fails to comply with the [Detrimental Activity] provisions […] of this Section 13 prior to, or during the Rescission Period, then any exercise, payment or delivery may be rescinded within two years after such exercise, payment or delivery. In the event of any such rescission, the Participant shall pay to the Company the**

4

**amount of any gain realized or payment received as a result of the rescinded exercise, payment or delivery**, in such manner and on such terms and conditions as may be required, and the Company shall be entitled to set-off against the amount of any such gain any amount owed to the Participant by the Company. As used herein, Rescission Period shall mean that period of time established by the Committee which shall not be less than 6 months after any exercise, payment or delivery pursuant to an Award.

25. Section 15(f) of the Plan provides in pertinent part:

In the event that a Participant or the Company brings an action to enforce the terms of the Plan or any Award Agreement and the Company prevails, the Participant shall pay all costs and expenses incurred by the Company in connection with that action, including reasonable attorneys' fees, and all further costs and fees, including reasonable attorneys' fees incurred by the Company in connection with collection.

26. Section 15(e) of the Plan states that it is governed by New York law and that "recipients of an Award under the Plan are deemed to submit to the exclusive jurisdiction and venue of the federal or state courts of New York, County of Westchester, to resolve any and all issues that may arise out of or relate to the Plan or any related Award Agreement."


**E. IBM's Grant of Awards to Defendant Subject to Contractual Obligations**

27. Throughout the course of Defendant's employment with IBM, IBM granted and Defendant received several tranches of Awards, totaling $470,220.96, that are now subject to rescission.

28. On July 17, 2019, Defendant accepted the EAA and Equity Award Terms and Conditions governing a June 7, 2019 award of 102 shares to Defendant. On or about June 7, 2021, those 102 shares vested as scheduled and were released to, and received by, Defendant with a value of $15,091.92. These shares are subject to a 12-month Rescission Period, which ended on June 7, 2022.

29. On March 19, 2021, Defendant accepted the EAA and Equity Award Terms and Conditions governing a June 8, 2020 award of 103 shares to Defendant. On or about June 8, 2021,

5

those 103 shares vested as scheduled and were released to, and received by, Defendant with a value of $15,363.48.  These shares are subject to a 12-month Rescission Period, which ended on June 8, 2022.

30. On December 17, 2018, Defendant accepted the EAA and Equity Award Terms and Conditions governing a November 1, 2018 award of 1008 shares to Defendant.  On or about October 1, 2019, those 1008 shares vested as scheduled and were released to, and received by, Defendant with a value of $146,593.44.  These shares are subject to a 36-month Rescission Period, which ended on October 1, 2022.

31. On December 17, 2018, Defendant accepted the EAA and Equity Award Terms and Conditions governing a November 1, 2018 award of 1089 shares to Defendant.  On or about October 1, 2020, those 1089 shares awarded to Defendant on November 1, 2018 vested as scheduled and were released to, and received by, Defendant with a value of $132,656.54.  These shares are subject to a 36-month Rescission Period, ending on October 1, 2023.

32. On December 17, 2018, Defendant accepted the EAA and Equity Award Terms and Conditions governing a November 1, 2018 award of 1129 shares to Defendant.  On or about October 1, 2021, those 1129 shares awarded to Defendant on November 1, 2018 vested as scheduled and were released to, and received by, Defendant with a value of $160,515.58.  These shares are subject to a 36-month Rescission Period, ending on October 1, 2024.

33. As described above and summarized in the chart below, Defendant gained a total of $470,220.96 in Awards that became subject to rescission and were rescinded by IBM.

| Award Date | Acceptance Date | Vesting Date | Rescission Period | Total Value (After Tax) |
|---|---|---|---|---|
| June 7, 2019 | July 17, 2019 | June 7, 2021 | One year (12 months) | $15,091.92 |
| June 8, 2020 | March 19, 2021 | June 8, 2021 | One year (12 months) | $15,363.48 |

6

| November 1, 2018 | December 17, 2018 | October 1, 2019 | Three years (36 months) | $146,593.44 |
|---|---|---|---|---|
| November 1, 2018 | December 17, 2018 | October 1, 2020 | Three years (36 months) | $132,656.54 |
| November 1, 2018 | December 17, 2018 | October 1, 2021 | Three years (36 months) | $160,515.58 |
| | | | | $470,220.96 |

34. These grants to Defendant became effective after, and were expressly conditioned upon, Defendant accepting the terms and conditions of (a) the Plan under which these long-term incentive awards were granted, (b) the EAAs, and (c) the accompanying Equity Award Terms and Conditions, including those provisions of the foregoing that enable IBM to cancel, modify, rescind, suspend, withhold, or otherwise restrict Awards in accordance with the Plan, and define the applicable Rescission Periods.

35. As reflected above, each EAA bears a digital timestamp indicating precisely when Defendant accepted each Award.

36. Each EAA also provides that Defendant's "participation in the [Plan was] voluntary."

37. Each EAA states that it, along with the Equity Award Terms and Conditions document and the Plan, which are collectively "incorporated [to the EAA] by reference […,] constitute the entire agreement between [Defendant] and IBM with respect to [Defendant's] Award."

**F. The Equity Award Terms and Conditions**

38. The Equity Award Terms and Conditions between Defendant and IBM which apply to Defendant's Awards currently subject to rescission state, in pertinent part (emphasis added):

> All determinations regarding enforcement, waiver or modification of the cancellation and rescission and other provisions of the Plan and your Equity Award

7

Agreement […] **shall be made in IBM's sole discretion**. Determinations made under your Equity Award agreement and the Plan need not be uniform and may be made selectively among individuals, whether or not such individuals are similarly situated.

39. The Equity Award Terms and Conditions also state, in pertinent part (emphases added):

You agree that the **cancellation and rescission provisions** of the Plan and your Equity Award Agreement are **reasonable and agree not to challenge the reasonableness of such provisions**, even where forfeiture of your Award is the penalty for violation.

40. The Equity Award Terms and Conditions specify that each EAA is governed by New York law and that "any action or proceeding with respect to your Equity Award Agreement shall be brought exclusively in the state and federal courts sitting in New York County or, Westchester County, New York."

41. The Awards are comprised of shares of IBM stock, which is traded on the New York Stock Exchange.

42. IBM coordinated the distribution and payment of the Awards through its New York headquarters.

G. **Defendant's Voluntary Resignation and Subsequent Employment with Accenture**

43. Defendant voluntarily resigned from IBM Thailand effective February 28, 2022.

44. Just over one month after her date of separation from IBM Thailand, effective April 11, 2022, Defendant commenced her employment with Accenture Thailand.

45. Upon information and belief, the position Defendant assumed with Accenture Thailand was, and remains, Country Managing Director of Thailand.

46. Upon information and belief, the position Defendant assumed with Accenture

Thailand is highly similar to Defendant's prior role at IBM Thailand.

47. Accenture Thailand and IBM Thailand are competitors.

48. IBM competes with Accenture Thailand and its parent company, Accenture, and Accenture's U.S. affiliates.

49. IBM and Accenture entities compete particularly in the information, digitalization, and consulting spaces, both globally and within the Asia-Pacific region.

50. Accenture Thailand is the largest competitor by revenue of IBM Thailand's consulting practice.

51. Defendant's employment with Accenture Thailand thus constitutes Detrimental Activity under the Plan.

### H. **IBM's Notice of Rescission and Defendant's Failure to Repay the Award**

52. By virtue of Defendant's employment with Accenture Thailand within the applicable Rescission Periods, pursuant to the Equity Terms and Conditions, the Plan, and the EAAs, IBM is entitled to and did rescind the Awards made to Defendant during the Rescission Periods.

53. By letters dated October 3, 2022 and December 12, 2022, IBM put Defendant on notice that, because Defendant engaged in Detrimental Activity within the applicable Rescission Periods, IBM rescinded the $470,220.96 in gains Defendant received when she exercised the Awards described herein.

54. The letters also reminded Defendant that Section 15(f) of the Plan would require her to pay all costs and expenses IBM incurs in connection with this action, including reasonable attorneys' fees in the prosecution and enforcement of this action, should IBM prevail in any action

to enforce the terms of the Plan.

55. The letters set forth the terms of the contractual obligations and set a first payment deadline of November 1, 2022.

56. Defendant responded to IBM's first letter within the deadline. Defendant did not deny that she received the Awards, but refused to make any payment.

57. In response, IBM sent another letter providing additional support for its claims, restating its demand for payment, and extending the deadline to January 9, 2023.

58. Defendant responded on January 27, 2023, again refusing to make any payment and stating her intent to continue refusing to make the required payment.

59. Defendant is therefore in breach, causing damage to IBM in the amount of $470,220.96.

### COUNT I — Breach of Contract

60. IBM repeats and realleges each and every allegation contained in the paragraphs above as though set forth herein.

61. The Plan is a fully executed, valid, and binding agreement.

62. Effective February 28, 2022, Defendant voluntarily resigned from IBM.

63. On or about April 11, 2022, and therefore within the relevant Rescission Periods, Defendant commenced employment with Accenture's subsidiary, Accenture Thailand, a competitor to IBM and its subsidiary, IBM Thailand. Defendant became employed at Accenture Thailand as Country Managing Director of Thailand, a role that is highly similar to Defendant's prior role as Country General Manager of Thailand for IBM Thailand.

64. Defendant had previously acknowledged that, pursuant to the Plan, if she chose to join a competitor of IBM within the Rescission Periods, as defined in the EAAs, the Awards issued

to her under the Plan would be forfeited.

65. Defendant's employment within the Restricted Periods with Accenture Thailand qualifies as "Detrimental Activity" as that term is defined under Sections 13(a)(i), (v) and (viii) of the Plan. IBM was therefore entitled to and did rescind Defendant's Awards she gained during the 12- and 36-month periods prior to accepting a job at Accenture.

66. Accordingly, on October 3, 2022 and December 12, 2022, IBM sent Defendant letters advising Defendant that it had rescinded Awards totaling $470,220.96. IBM demanded repayment first by November 1, 2022, and then extended that deadline to January 9, 2023.

67. Defendant has not denied receiving the Awards but has nevertheless failed to remit payment to IBM. Defendant has further stated her intent to continue to refuse to make the required payment to IBM.

68. Defendant is therefore in breach, causing damage to IBM in the amount of $470,220.96.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff IBM respectfully requests that this Court enter judgment in its favor and against Defendant as follows:

1. Payment by Defendant to IBM of a sum not less than $470,220.96, together with pre- and post-judgment interest;

2. Awarding IBM its attorneys' fees, costs, and disbursements incurred as a result of this action, as per the terms of the Plan; and

3. Awarding IBM such other and further relief as the Court deems just and proper.

Dated:  February 13, 2023                        **DAVIS+GILBERT LLP**

                                                    By:   */s/ James R. Levine*
                                                      James R. Levine
                                                      Sarah Benowich

                                                      1675 Broadway
                                                      New York, New York 10019
                                                      Telephone:  (212) 468-4985
                                                      Facsimile:  (212) 468-4888
                                                      jlevine@dglaw.com
                                                      sbenowich@dglaw.com

                                                      *Attorneys for Plaintiff*
                                                      *International Business Machines Corporation*